UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ERIC X. RAMBERT,                    :
                                    :
          Plaintiff                 : No. 4:CV-09-0634
                                    :
     vs.                            : (Complaint Filed 04/07/09)
                                    :
                                    : (Judge Muir)
JEFFREY A. BEARD, <u>et</u> <u>al</u>.,        :
                                    :
          Defendants                :

## <u>MEMORANDUM AND ORDER</u>

March 15, 2010

## <u>Background</u>

Plaintiff, Eric X. Rambert, a prisoner formerly confined
at the State Correctional Institution, Dallas, ("SCI-Dallas"),
Pennsylvania, filed the above civil rights action pursuant to
42 U.S.C. § 1983.[1]  On April 7, 2009, the action was removed to
federal court from the Luzerne County Court of Common Pleas. On
June 15, 2009, the plaintiff filed a second amended complaint.
(Doc. 19). The named defendants in the second amended complaint
are Dr. Jeffrey Beard, Secretary, Department of Corrections;
and the following employees of SCI-Dallas: James T. Wynder,

---

1.  On October 29, 2009, plaintiff was transferred to the
State Correctional Institution, Coal Township, Pennsylvania.
(<u>See</u> Doc. 56).

former SCI-Dallas Superintendent; Michael Klopotoski, current SCI-Dallas Superintendent; Joseph Zakaraukas, Security Captain; Dorina Varner, Acting Chief Grievance Coordinator; Cindy Watson, former Chief Grievance Coordinator; Robin Lucas, Grievance and Litigation Coordinator; Patricia Ginocchetti, Health Care Administrator; Lea Liputs, current Health Care Administrator; Thomas Leskowsky, R.N.; Donald O'Brien, Physician's Assistant; Cheryl Wisniewski-Bunk, Physician's Assistant; Charles McKeown, Hearing Examiner; and the following Program Review Committee members: Norman Demming, Jerry Walsh and Vincent Mooney. Presently before the court and ripe for disposition are the following motions: Motion to Dismiss the second amended complaint filed on behalf of Donald O'Brien, P.A. and Cheryl Wisniewski Bunk, P.A.(Doc. 44); Motion to Dismiss the second amended complaint filed on behalf of the following eleven Corrections defendants: Lucas, Wynder, Klopotoski, Watson, Varner, Beard, McKeown, Zakaraukas,

Demming, Walsh and Mooney[2] (Doc. 23); and plaintiff's motions for preliminary injunctive relief. (Docs. 46, 52).

The parties have fully briefed the issues and the motions are now ripe for disposition. For the reasons that follow, the Court will deny the motion to dismiss filed on behalf of defendants O'Brien and Wisniewski-Bunk, grant the Corrections defendant's motion in part and deny it in part and dismiss plaintiff's motions for injunctive relief as moot.

## I. **Motion to Dismiss**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)). While a complaint need only

_____

2. The remaining three correctional defendants, Patricia Ginocchetti, Health Care Administrator; Lea Liputs, current Health Care Administrator; Thomas Leskowsky, R.N., are not referenced in the Corrections defendants' motion to dismiss.

contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570, 550 U.S. 544, 127 S.Ct. 1955 at 1974, 167 L.Ed.2d 929. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965.) "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, 127 S.Ct. at 1964-65, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Id., 127 S.Ct. at 1965 (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir.2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we

4

separate the factual elements from the legal elements and disregard the legal conclusions. <u>Id</u>. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a " 'plausible claim for relief.' " <u>Id</u>. at 211 (quoted case omitted).

In addition, because plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted in forma pauperis status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. <u>See</u>, <u>e.g.</u>, <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126 n. 6 (9th Cir.2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. <u>See</u> <u>Lopez</u>; <u>Dare v. U.S.</u>, Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), aff'd,264 FedAppx. 183 (3d Cir.2008).

## II. <u>Allegations in the Second Amended Complaint</u>

Plaintiff's allegations encompass the following four claims:

**1.   <u>Confiscation of Religious Literature</u>**

On September 5, 2007, the plaintiff was issued Confiscated Items Receipt, No. A. 707436, notifying him that "a manilla envelope containing established long standing religious materials by Honorable Elijah Muhammad" which was delivered to the institution for him, was identified as a "security threat" and was confiscated as such.   (Doc. 19, Second Amended Complaint).

On September 6, 2007, plaintiff wrote to the security office, requesting his materials.  <u>Id</u>.

On September 7, 2007, defendant, Captain Zakaraukas replied, stating that "Kam, Inc. is identified as a security threat group" and "the items will not be returned."   <u>Id</u>. Plaintiff claims this is a violation, as "there was never any due process notification at this institution that prisoners could not purchase the Honorable Elijah Muhammad's long standing Nation of Islam's Religious literature from any particular company and the prison inmate accountant had deducted the $47.00 dollars from prisoner/plaintiff's account

to purchase from KAM, Inc." Thus, plaintiff states that "the confiscation of these religious materials was in violation of DC-ADM 803 VI. E.7, to have the religious material returned or have the plaintiff return it to the company to get his $47.00 dollars back." Id.

On September 15, 2007, plaintiff filed Grievance No. 200984, requesting, pursuant to DC-ADM 803 VI.E.7, that plaintiff's confiscated property be returned to the sender. Id.

On September 23, 2007, Lt. Miller responded to plaintiff's grievance, stating that pursuant to DC-ADM 803 VI.E.7, "Incoming mail containing contraband shall be confiscated and held for further inspection and disposition. The contraband shall be returned to the sender (if known), or destroyed" and "if the inmate wish[es] to have the contraband returned to the sender, he suggests that the plaintiff contact the security office and at the conclusion of their inspection they will dispose of the material properly." Id.

On September 25, 2007, the plaintiff wrote to defendant Zakaraukas, requesting the property that is established as religious material be returned to the sender per policy. Id.

Plaintiff states that he received no reply to his request. Id.

On November 30, 2007, plaintiff filed an appeal to defendant Wynder, who plaintiff claims, also failed to respond to plaintiff's appeal. Id.

On December 6, 2007, plaintiff filed an appeal to the Chief Grievance Officer, Cindy Watson. Id.

On December 19, 2007, the Acting Chief Grievance Officer, Dorina Varner notified plaintiff that he "did not send a copy of the original grievance." Id.

On December 26, 2007, plaintiff notified defendant Varner "that all copies were sent." Id.

On January 3, 2008, defendant Watson dismissed plaintiff's appeal. Id. Plaintiff states that to date, the confiscated item has never been returned to the seller, nor has plaintiff been reimbursed his monies. Id. Thus, plaintiff claims this personal property has been "unlawful[ly] taken." Id.

**2. Medical Claim**

On January 2, 2008, plaintiff states that he "discovered from [his] monthly account statement that he had got billed for Chronic Medical Care" on November 27, 2007 and December 17, 2007. Id.

8

Specifically, plaintiff states that "in both instances the plaintiff complained of neck, lower back, left hip pain, and bumps/sores in his scalp." Id. He claims that he was seen by defendant O'Brien, who "changed the recent Dalsalid that had been issued by defendant Bunk on 11/15/07." Id. Plaintiff explained to defendant O'Brien that the Dalsalid was not working and that "the prior 4 years and 7 months, chronic Feldene 'is what helped the pain'" and that defendant Bunk "took [it] from me." Id. Defendant O'Brien "administered Motrin and Selenium Sulfide." Id.

On January 2, 2008, plaintiff filed a request for defendant, Lea Liputs, current Health Care Administrator, to refund plaintiff's monies. Id.

On January 8, 2008, defendant Liputs refused plaintiff's request. Id.

On January 13, 2008, plaintiff filed Grievance No. 214804, requesting to be reimbursed for the monies deducted from his account for the medical care he received. Id. Plaintiff states that defendant, Robin Lucas rejected plaintiff's grievance as untimely, stating that a grievance must be filed within fifteen (15) days after the event. Id.

On January 30, 2008, plaintiff appealed the rejection of Grievance No. 214804 to defendant Klopotoski. <u>Id</u>.

On February 4, 2008, plaintiff states that "defendant Klopotoski sanctioned defendant Lucas's rejection and stated 'when you sign up for sick call services you are informed by medical professionals before leaving the dispensary of your medical co-payment'." <u>Id</u>. Plaintiff states that he "has never signed any cash slips binding the medical staff to deduct money for co-payment, nor has there ever been an issue raised by the medical staff for failure to do so because the defendants are not in compliance with DC-ADM 820." <u>Id</u>.

On February 5, 2008, plaintiff filed an appeal to defendant Watson. <u>Id</u>. No response has been received. <u>Id</u>.

On February 5, 2008, plaintiff filed Grievance No. 217116, claiming defendants have been taking monies out of his account in violation of DC-ADM 820, a provision that allows for a waiver of medical expenses for chronic medical care. <u>Id</u>.

On February 11, 2008, defendant Ginocchetti denied plaintiff's grievance as "unnecessary and frivolous." <u>Id</u>.

On February 11, 2008, plaintiff filed Grievance No. 218224, claiming that defendants had "obstructed the plaintiff's

10

medication" when "plaintiff signed for sick call, was billed and given only a couple, two (2) days of Motrin." <u>Id</u>. He further claimed that defendant Ginocchetti refused to reimburse plaintiff pursuant to DC-ADM 820, "where it was already settled that plaintiff's injuries were work related which exempt him from copayment for a permanent chronic injury." <u>Id</u>.

On February 20, 2008, plaintiff filed an appeal of Grievance No. 217116, to defendant Klopotoski, who plaintiff states "upheld defendant Ginocchetti, and said if plaintiff's conditions were chronic he would never been charged for medical services." <u>Id</u>. Plaintiff filed an appeal on February 25, 2008 to defendant Watson, but received no response. <u>Id</u>.

On February 28, 2008, defendant Klopotoski responded to plaintiff's appeal of Grievance No. 218224, stating that "plaintiff's claim that he has not received medication since in the RHU is inaccurate." <u>Id</u>.

On February 28, 2008, plaintiff filed an appeal to defendant Watson, to which he claims no response was received. <u>Id</u>.

On April 29, 2008, defendant Beard issued "Reissue of DC-ADM 820, 'Co-Pay for Medical Services'" which lists the

following diseases or illnesses as chronic: Asthma, Congestive Heart Failure, Coronary Artery Disease, Diabetes, Dislipidemia, Hepatitis C, HIV, and Hypertension. Id.

On May 14, 2008, plaintiff filed Grievance No. 228874 requesting reimbursement for the monies deducted from his account for medical expenses. Id.

On May 20, 2008, defendant Leskowsky denied plaintiff's grievance, stating that "the issue with your knee is not considered a chronic medical issue" and that "plaintiff cannot challenge Beard's arbitrary and discriminatory policy and the $50.00 dollars will not be returned." Id.

On June 17, 2008, plaintiff filed an appeal to defendant Klopotoski. Id.

On June 24, 2008, defendant Klopotoski denied plaintiff's appeal, and "upheld defendant Leskowky and did not deal with plaintiff's issues or grievance." Id.

On July 3, 2008, plaintiff filed an appeal to defendant Watson. Id.

On July 24, 2008, defendant Watson forwarded plaintiff's grievance to "Bureau of Health Care Services to solicit input, that the final review will be delayed." Id.

On August 24, 2008, plaintiff wrote to defendant Watson, expressing his concern about the delay in responding to his appeal. <u>Id</u>.

On September 11, 2008, defendant Varner responded to plaintiff's August 24, 2008 inquiry, stating that "the above referenced grievance was forwarded to the Bureau of Health Care Services for review, it is complete, a response was received and final disposition will be rendered." <u>Id</u>.

On January 14, 2009, the plaintiff received a final disposition by defendant Varner,"totally debunking the grievance issue to the plaintiff's degenerative knee joint disease as appropriate for co-payment, totally omitt[ing] [plaintiff's] degenerative joint disease of the cervical spine which was the basis and still is the basis of the plaintiff's complaint." <u>Id</u>. Thus, plaintiff files the instant action, claiming that defendants have deducted monies from his inmate account in violation of the Fourteenth Amendment, and denied him appropriate medical care in violation of the Eighth Amendment. <u>Id</u>.

**3. <u>Program Review Committee Review</u>**

Plaintiff filed Grievance No. 236175, claiming that he was to be seen on July 16, 2008 for his "90 day Policy Review." Id. Unit Manager Chris Putnam replied to plaintiff's grievance, stating that "plaintiff was correct, he should have been seen 7/16/08" and that "the plaintiff will be scheduled to see PRC next week." Id.

On July 24, 2008, plaintiff filed Grievance No. 237090, stating that he had still not been seen by the PRC. Id. Unit Manager Putnam "denied the grievance as resolved", responding that "plaintiff did not wait the allowable time by policy for Grievance No. 236175 to be replied to, [plaintiff's] 90 day review was accidently missed and [plaintiff would be] scheduled to see PRC next week." Id. Plaintiff states that he "did not see the PRC until three weeks over his 90 day Policy Review." Id.

On August 14, 2008, plaintiff claims that defendants Mooney, Demming and Walsh, "did falsify a document committing perjury in an attempt to cover up violating plaintiff's administrative and procedural due process to be seen by the Program Review Committee on his 90 day under the DOC policy for disciplinary custody when" on August 7, 2008, they "went on the

14

record falsely stating that 'Inmate Rambert was not due to be seen, but was seen at his request for a time cut'." Id. Plaintiff claims that this "is a false report/statement that all defendants Mooney, Walsh and Demming signed", since, as plaintiff alleges, "the criteria for time cuts is the 'Unit Management Team' requests it." Id. Thus, Plaintiff alleges that the delay in his PRC hearing violated his due process rights under the Fourteenth Amendment.

### 4. <u>Disciplinary Claim</u>

Plaintiff states that defendant, Charles J. McKeown "did violate plaintiff's administrative and procedural due process when he stated a lie in misconduct sanction # A894702 that the security cameras in the chow hall did not see the plaintiff come into the chow hall and walk straight down the middle aisle to line #3 window and never went to line #2,to where Sgt. Kross knew the plaintiff only ate once and was doing to plaintiff what became a ritual for guards to take prisoner's food and plaintiff has a right under DC-ADM 610 to three meals." Id. Plaintiff believes that defendant Mckeown's "assessment that cameras that are for the safety and control of the inmates and staff are defective violated plaintiff's right to an impartial

hearing when he denied C.O. Burgess as a witness at plaintiff's misconduct hearing, and stated 'not needed to determine the facts'." <u>Id</u>. Plaintiff states that "there were no facts" and "defendant McKeown has a 100 percent conviction rate where the camera, if effective, would clearly exonerate the prisoner but instead he never finds the evidence in favor of inmates, the camera's are always inconclusive." <u>Id</u>.

Plaintiff contends that defendant McKeown has retaliated against the plaintiff in Misconduct No. A894702 and six other misconducts that plaintiff has received since January 7, 2009, and that "all misconducts were issued falsely and lack any evidence, in violation of the 8th and 14[th] Amendments." <u>Id</u>.

Plaintiff filed Grievance # 215438, "complaining about the ineffectiveness of the SCI-Dallas CCTV system." <u>Id</u>. Defendant, Joseph Zakaraukas responded to plaintiff's grievance with the following: "Should we receive the funds adequate to upgrade the CCTV system rest assured that improvements will be made, thank you for your input and concern in this matter." <u>Id</u>. Plaintiff believes that "this was full of sarcasm." <u>Id</u>. Defendant Klopotoski denied plaintiff's appeal, stating that he is "confident the system satisfactorily meets the performance

standards that were intended for it upon installation." <u>Id</u>.
On final review, defendant Watson found that "plaintiff failed
to provide sufficient evidence that the cameras in the kitchen
area are not working properly because they don't zoom in." <u>Id</u>.
Plaintiff alleges that these are all "debunkery statements but
the truth the plaintiff believes is that defendant McKeown is
falsely manipulating the cameras but since his assessment to
all camera reports are always deemed inconclusive the cameras
are defective and the plaintiff was injured and falsely
imprisoned as a result of the defective CCTV system that is
supposed to meet top security to protect and serve the interest
of the staff and inmate's safety." <u>Id</u>.

Plaintiff files the instant action in which he seeks
compensatory and punitive damages, as well as injunctive
relief, for violations of his First, Eighth and Fourteenth
Amendments. <u>Id</u>.

III.    <u>Discussion</u>

    A.    <u>Injunctive Relief</u>

It is well recognized that the adjudicatory power of a
federal court depends upon "the continuing existence of a live
and acute controversy." <u>Steffel v. Thompson</u>, 415 U.S. 452, 459,

17

94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Id. at 459 n. 10 (citations omitted). "Past exposure to illegal conduct is insufficient to sustain a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects." Rosenberg v. Meese, 622 F.Supp. 1451, 1462 (S.D.N.Y.1985) (citing O'Shea v. Littleton, 414 U.S. 488, 495-96(1974)). A prisoner's transfer or release from prison moots his claims for injunctive or declaratory relief because he is no longer subject to the conditions he alleges are unconstitutional. Abdul-Akbar v. Watson, 4 F.3d 195, 206-07 (3d Cir.1993); see also Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir.1981) ("[A] prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge.").

Plaintiff has been transferred to SCI-Coal Township. (See Doc. 56.) There is nothing in the record to suggest that it is likely that he will return to SCI-Dallas in the foreseeable future. Consequently, plaintiff's request in his complaint for injunctive relief, as well as his pending motions for

18

preliminary injunctive relief (Docs. 46, 52) are moot and will be dismissed. See Fortes v. Harding, 19 F.Supp.2d 323, 326 (M.D.Pa.1998) ("Fortes' transfer to another institution moots any claims for injunctive or declaratory relief."). However, the Court recognizes that a prisoner's transfer or release does not moot his claims for damages. See Muslim v. Frame, 854 F.Supp. 1215, 1222 (E.D.Pa.1994) ("an alleviation of an alleged unconstitutional condition does not moot a prisoner's claim for actual and punitive damages.").

**B.   Claims against various Defendants**

Defendants argue that plaintiff fails to state a claim against defendants Beard, Wynder, Klopotoski, Varner, Watson and Lucas because the complaint reveals that they lack any personal involvement in the wrongs, and plaintiff's allegations against these defendants are based solely upon either their roles in the grievance process or their supervisory roles. (Doc. 24, at 3-5. The Court agrees.

In order to succeed under Section 1983, a plaintiff must adduce evidence that the defendants were personally involved in the deprivation of rights as there is no respondeat superior liability permitted under Section 1983. Rode v. Dellarciprete,

845 F.2d 1195, 1207 (3d Cir.1988) ("liability [in a civil rights action] cannot be predicated solely on the operation of respondeat superior."); McClelland v. Facteau, 610 F.2d 693, 695 (10th Cir.1979) ("Respondeat superior is a doctrine of vicarious liability based upon public policy [and] the notion that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way."). "A defendant in a [§ 1983] action must have personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d at 1207. "Personal involvement can be shown through allegations of personal direction or of actual [contemporaneous] knowledge and acquiescence." Id. Accord Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005) ("Her amended complaint likewise does not contain even a remote suggestion that Attorney General Fisher had contemporaneous, personal knowledge of her transfer and acquiesced in it.")

As to defendants Wynder, Klopotoski, Varner, Watson and Lucas, their sole role alleged in the complaint concerns their handling of plaintiff's grievances. Such is insufficient as a matter of law to render these defendants liable.

"[T]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." Rauso v. Vaughn, Civil No. 96-6977, 2000 WL 873285, at *16 (E.D.Pa., June 26, 2000). See also Overholt v. Unibase Data Entry, Inc., 221 F.3d 1335 (Table), 2000 WL 799760, at *3 (6th Cir.2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation.") (citations omitted); Mitchell v. Keane, 974 F.Supp. 332, 343 (S.D.N.Y.1997) ("it appears from the submissions before the court that Mitchell filed grievances, had them referred to a prison official, and received a letter reporting that there was no evidence to substantiate his complaints. Mitchell's dissatisfaction with this response does not constitute a cause of action."); Caldwell v. Beard, Civil No. 2:07-CV-727, 2008 WL 2887810, at *4 (W.D.Pa. July 23, 2008) ("Such a premise for liability [i.e., for performing a role in the grievance process] fails as a matter of law."), aff'd,--- Fed.Appx. ----, 2009 WL 1111545

(3d Cir. April 27, 2009); <u>Caldwell v. Hall</u>, Civil No. 97-8069, 2000 WL 343229, at *2 (E.D.Pa. March 31, 2000) ("The failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."); <u>Orrs v. Comings</u>, Civil No. 92-6442, 1993 WL 418361, at *2 (E.D.Pa. Oct.13, 1993) ("But an allegation that a defendant failed to act on a grievance or complaint does not state a Section 1983 claim."); <u>Jefferson v. Wolfe</u>, Civil No. 04-44, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) ("These allegations [of denying grievances or grievance appeals] are insufficient to establish such Defendants' personal involvement in the challenged conduct under Section 1983. <u>See</u> <u>Watkins v. Horn</u>, 1997 WL 566080 at * 4 (E.D.Pa..[sic] 1997) (concurrence in an administrative appeal process is not sufficient to establish personal involvement)").

Additionally, defendant Beard should also be dismissed from this action. Plaintiff's only allegation with respect to Secretary Beard is that on April 29, 2008, defendant Beard issued Department policy DC-ADM 820 ("Co-Pay for Medical Services"), which was allegedly misapplied by other named defendants. (Doc. 19, Second Amended Complaint). The plaintiff does not allege that Beard violated the Constitution

22

by enacting DC-ADM 820, or that Beard was personally involved in applying the policy in a manner that violated plaintiff's constitutional rights. Thus, it is clear that plaintiff is attempting to hold defendant Beard liable based upon his position as Secretary of the Department of Corrections. However, a § 1983 action cannot be based solely upon a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir.1988); see also, Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); see Atkinson v. Taylor, 316 F.3d 257 (3d Cir.2003); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir.1976).

### C. **Fourteenth Amendment Procedural Due Process claims**

Plaintiff raises procedural due process claims concerning the confiscation of his property. In this regard, he claims that he did not receive procedural due process regarding the confiscation of his religious literature, in that he was not given the opportunity to have them shipped back to the sender before they were destroyed, and he was not reimbursed for their value.

To establish a due process violation under the Fourteenth Amendment a plaintiff must demonstrate that the defendants

deprived him of either a property or liberty interest. <u>Daniels v. Williams</u>, 474 U.S. 327, 339 (1986). Property rights are basic civil rights and a deprivation of property without due process gives rise to a claim under section 1983. <u>Lynch v. Household Fin. Corp.</u>, 405 U.S. 538, 552 (1972). Inmates have a protected property interest in the funds in their prison accounts, <u>Reynolds v. Wagner</u>, 128 F.3d 166, 179 (3d Cir.1997), for which they are entitled to due process when deductions are made. <u>Gillihan v. Shillinger</u>, 872 F.2d 935, 939 (10th Cir.1989); <u>Quick v. Jones</u>, 754 F.2d 1521 (9th Cir.1984); <u>Artway v. Scheidemantel</u>, 671 F.Supp. 330, 337 (D.N.J.1987).

What is not clear in the present action is whether plaintiff had a protected property interest in the confiscated items, which he alleges were purchased in accordance with existing DOC policies and regulations. Specifically, plaintiff alleges that, at the time he put his order in and request to have funds deducted for such order, the security office made no indication that such materials were a security threat and allowed the transaction to proceed. Thus, plaintiff believed that the purchase of these materials was in accordance with DOC

policies, and that he would be permitted these publications as part of his personal property.

Initially, the Court notes that there remains a question of fact as to whether plaintiff had a constitutionally protected property interest in the confiscated items and, if so, whether he received all process that was due. Specifically, it is unclear whether the policy in question created a protectable property interest, and if so, whether any procedural protections provided for by the policies were adequate. It may very well be that plaintiff's property was destroyed through the negligent or intentional actions of defendants that were random and unauthorized, to which plaintiff may not be able to state a due process claim as a matter of law where he has an adequate state tort remedy to allow him to recover the property, or the value thereof, from state officials in a state forum. Parratt v. Taylor, 451 U.S. 527 (1981); Hudson v. Palmer, 468 U.S. 517 (1984). However, to the extent that plaintiff's property was destroyed pursuant to DOC policy, the principles announced in Mathews v. Eldridge, 424 U.S. 319, 335 (1976) apply. In Matthews, the Supreme Court announced a balancing test for determining when a

pre-deprivation hearing is necessary under the Fourteenth Amendment.

> Due process is flexible and calls for such procedural protections as the particular situation demands. Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Matthews, 424 U.S. at 334-335 (internal quotations and citations omitted).

This Court agrees that the Matthews balancing test may be applicable to plaintiff's claims. Because the Court does not have all of the applicable policies before it, it cannot determine whether defendants' policies provided him with all the process that he was due under the Matthews balancing test and whether or not defendants followed the applicable policies when they failed to provide plaintiff the opportunity to send

the confiscated item back to the sender. Thus, Security Officer Zakaraukas is not entitled to dismissal from this action and plaintiff's due process property interest claim is permitted to proceed.

Likewise, plaintiff's claim that defendants deducted monies from plaintiff's inmate account for medical expenses, without appropriate notice, and in violation of DOC policy, as it existed at the time, that plaintiff's medical needs were classified as chronic and exempt from payment, may also proceed.

As previously mentioned, "[i]nmates have a property interest in funds held in prison accounts. Thus, inmates are entitled to due process with respect to any deprivation of this money." <u>Reynolds</u>, 128 F.3d at 179.

The requirements of due process are flexible and are determined with reference to the private interests at stake, the governmental interests, and the value of procedural requirements in that particular context. <u>Mathews</u>, 424 U.S. at 335. Applying this standard, the United States Court of Appeals for the Third Circuit has found no procedural due process violation in the routine deduction from inmate institutional

accounts of fixed fees for medical services and housing costs.
See Reynolds, 128 F.3d at 179-81; Tillman v. Lebanon Co.
Correctional Facility, 221 F.3d 410, 421 n. 12 (3d. Cir.2000)
(citing United States v. James Daniel Good Real Property, 510
U.S. 43, 53 (1993)) (in "extraordinary situations" such as
routine deduction of fees from a prisoner's account even
without authorization, post-deprivation remedies may be
adequate).  The Court, however, on a motion to dismiss, cannot
conclude such, as questions of fact remain as to whether
plaintiff was afforded adequate notice prior to the deduction
of medical payments, or if plaintiff's medical condition exempt
him from payment.   Thus, plaintiff's due process claim
regarding monies deducted from his inmate account for medical
expenses remains.

     **D.    Eighth Amendment Medical Claim**

     Plaintiff alleges that he was seen by defendant O'Brien,
who "changed the recent Dalsalid that had been issued by
defendant Bunk on 11/15/07." (Doc. 19, Second Amended Complaint
at 5).   Plaintiff explained to defendant O'Brien that the
Dalsalid was not working and that "the prior 4 years and 7
months, chronic Feldene 'is what helped the pain'" and that

defendant Bunk "took [it] from me." Id. Defendant O'Brien "administered Motrin and Selenium Sulfide." Id.

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (quotation and citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. <u>Farmer v. Carlson</u>, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). <u>See</u> <u>McCracken v. Jones</u>, 562 F.2d 22, 24 (10th Cir. 1977); <u>Smart v. Villar</u>, 547 F.2d 112, 113 (10th Cir. 1976), <u>cert</u>. <u>denied</u>, 450 U.S. 1041 (1981).

Defendants O'Brien and Wisniewski-Bunk argue that plaintiff's complaint amounts to a disagreement over the proper course of treatment and therefore does not support a cause of action under 42 U.S.C. § 1983. While this may very well be the case, the Court finds that such conclusion cannot be determined on the instant motion to dismiss.

Plaintiff alleges that he has been diagnosed with Chronic Degenerative Joint Disease of the Cervical Spine, which has been alleviated for the past four years with the medication Feldene. Within a short period of time, plaintiff's medication was changed to Dalsaid and then to Celenium Sulfate and Motrin.

While there is no indication that defendants knew that these medications would be ineffective, there is also no indication that they were an appropriate substitute. Thus, the Court finds that the record needs to be expanded to determine whether plaintiff in fact suffered from a serious medical condition, for which he was rendered appropriate medical care. Thus, plaintiff's claim under 42 U.S.C. § 1983 for violation of the Eighth Amendment may proceed against defendants O'Brien and Bunk.

     **E.**    <u>**Program Review Committee Review Claim**</u>

To the extent that plaintiff is attempting to establish a Fourteenth Amendment procedural due process violation based upon the denial of his 90 day PRC review hearing from July 16, 2008 until August 14, 2008, a period of time of less than 1 month, the Court finds that such fails to state a claim upon which relief can be granted.

Conducting a procedural due process analysis involves a two step inquiry: the first question to be asked is whether the complaining party has a protected liberty or property interest within the contemplation of the Due Process clause and, if so, the second question to be asked is whether the process afforded

the complaining party comported with constitutional requirements. <u>Shoats v. Horn</u>, 213 F.3d 140, 143 (3d Cir.2000).

A protected liberty interest may arise from one of two sources: (1) directly from the Fourteenth Amendment's due process clause itself or (2) from state law. <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983). There is no liberty interest created directly by the Fourteenth Amendment that prevents an inmate from being subjected to disciplinary confinement. <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995) ("Conner asserts, incorrectly, that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation"); <u>Stephany v. Wagner</u>, 835 F.2d 497, 499 (3d Cir.1987) ("the Due Process Clause does not give a prisoner a liberty interest in remaining in the general prison population").

Neither has Pennsylvania created a liberty interest in being free from disciplinary or administrative confinement. Addressing the issue of state created liberty interests, the United States Supreme Court in <u>Sandin v. Conner</u>, 515 U.S. at 484, held that a state government "may under certain circumstances create liberty interests which are protected by

the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

Placing, or more accurately, maintaining plaintiff in administrative confinement for less than 1 month without any hearing does not impose such an atypical and significant hardship as a matter of law under the facts alleged in the operative complaint and so does not deprive him of any liberty interest. See e.g., Siddiq v. Edlund, 8 Fed.Appx. 522, 524 (6th Cir.2001) ("placement in administrative segregation [for twenty months] did not constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' "); Jones v. Baker, 155 F.3d 810 (6th Cir.1998) (administrative confinement for two and one-half years was not atypical and significant) (cited approvingly in Fraise v. Terhune, 283 F.3d 506, 523 (3d Cir.2002)); Washington-El v. Diguglielmo, No. 06-CV-4517, 2008 WL 2954745 (E.D.Pa. July 29, 2008) (17 months in administrative custody is not atypical and

significant so as to qualify as a liberty interest). Cf. Griffin v. Vaughn, 112 F.3d 703 (3d Cir.1997) (confinement in administrative custody for fifteen months with only one hour of exercise per day five days per week did not amount to an atypical and significant hardship and thus did not deprive prisoner of a liberty interest). Hence, because the time Plaintiff spent in the administrative custody without a required PRC hearing was less than 1 month, and so no liberty interest was at stake pursuant to Griffin, plaintiff was not entitled under the Federal Constitution to any procedural protections.

This is true notwithstanding the fact that Pennsylvania rules and regulations may have required a PRC hearing every 90 days. The Supreme Court has observed that "[a] liberty interest is of course a substantive [in contrast to a procedural] interest of an individual; it cannot be the right to demand needless formality. Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.... The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of

34

course, but in making that choice the State does not create an independent substantive right." Olim v. Wakinekona, 461 U.S. 238, 250-51(1983) (internal quotations, citations and footnotes omitted). See also United States v. Jiles, 658 F.2d 194, 200 (3d Cir.1981) ("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension.") (quoting Slotnick v. Staviskey, 560 F.2d 31, 34 (1st Cir.1977)); Shango v. Jurich, 681 F.2d 1091, 1101-02 (7th Cir.1982) ("[A] state created procedural right is not itself a liberty interest.... States may decide to engage in such proceedings, but the due process clause does not compel them to do so because no constitutionally cognizable substantive interest of the prisoner is at stake."); Hayes v. Muller, No. 96-3420, 1996 WL 583180, at *7 (E.D.Pa. Oct.10, 1996) ("[A] state does not violate an individual's federal constitutional right to procedural due process merely by deviating from its own established procedures."). Having been deprived of no liberty interest by the defendants' failure to abide by DOC policies requiring 90dayreview hearings, the complaint fails to state a

procedural due process claim as against defendants PRC members

Mooney, Demming and Walsh.

**F.    Disciplinary Claim**

Plaintiff's final claim involves a misconduct he received.

Plaintiff's only factual allegations regarding the misconduct

are that during the hearing held on Misconduct No. A894702,

defendant, Hearing Examiner McKeown denied plaintiff's request

for a witness (Burgess), on the grounds that the witness "was

not needed to determine the facts", and determined that the

security camera[3] reports were inconclusive. (Doc. 19, Second

Amended complaint at p. 9).  Plaintiff complains that McKeown

accepted the reporting officer's version of events over

plaintiff's testimony, and determined that the camera did not

show the plaintiff.  Id.   Thus, plaintiff contends that

---

3.  To the extent that plaintiff requests an "upgrade" to all
security cameras at SCI-Dallas, this is not a form of relief
that this Court can afford plaintiff.  The role of the court
is to enforce constitutional standards and to protect the
constitutional rights of prisoners. Ruiz v. Estelle, 679
F.2d 1115, 1126 (5th Cir.1982), cert. denied, 460 U.S. 1042,
103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). This role does not
include "supervising prison administration," Id. at 1126, or
becoming "enmeshed in the minutiae of prison operations."
Bell v. Wolfish, 441 U.S. 520, 562 (1979). Prison
administration must be left to the discretion of prison
administrators.

Hearing Examiner McKeown violated his due process rights by denying him a witness at his disciplinary hearing.

Plaintiff contends that Misconduct No. A894702, and six other misconducts that plaintiff received since January 7, 2009, falsely charge him with misconduct and that defendant McKeown has retaliated against plaintiff in these misconducts. <u>Id</u>.

### 1. <u>Retaliation</u>

Plaintiff claims that defendant McKeown retaliated against him by finding him guilty of Misconduct No. A894702 and six other misconducts. The facts set forth by plaintiff, however, fail to establish the plaintiff was engaged in any protected activity when he was found guilty of Misconduct No. A894701, or the six other misconducts. To the extent that he would argue that the filing of a civil rights action or grievance against correctional officers resulted in defendant McKeown's retaliation, plaintiff fails to allege that defendant McKeown was even aware of these filing or why such filings would have caused McKeown to retaliate against him. Such allegations are insufficient to support a retaliation claim. <u>Cf</u>. <u>Watkins v. Horn</u>, 1997 WL 266837, at *6 (E.D.Pa. May 13, 1997) (citation

37

omitted) (finding prisoner's pro se § 1983 allegations of retaliation inadequate).

The only proof plaintiff sets forth is the disciplinary action, itself, and the fact that McKeown credited the correction officer's report over plaintiff's. <u>Sims v. Dragovich</u>, 1999 WL 371621, at *4 (E.D.Pa. June 8, 1999) (granting summary judgment on claim of retaliation when claim is based on unsupported conclusions and vague allegations). Although plaintiff disputes the version of events presented by the corrections officer in the misconduct, he does not present any evidence that defendant McKeown was substantially motivated by the filing of plaintiff's grievances and/or civil rights suit to find him guilty and sanction him. Because plaintiff cannot base his retaliation claim upon a challenge to defendant McKeown's authority to assess the credibility of the report of reporting correctional officer, plaintiff's claim against defendant McKeown for Misconduct No. A894702, and the six other misconducts will be dismissed. <u>Sims</u>, 1999 WL 371621, at *4 (dismissing retaliation claim against hearing examiner in which plaintiff claimed that hearing examiner wrongfully accepted

correction officer's account of facts over plaintiff's account).

**2.  Due Process**

In <u>Sandin v. Conner</u>, 515 U.S. 472, 484, 115 S.Ct. 2293(1995), the Supreme Court reiterated the principle that prisoners do not have a right to remain in general population and that the Due Process Clause does not itself confer a liberty interest "in freedom from state action taken within the sentence imposed." 515 U.S. at 480, 115 S.Ct. at 2298.  The Court further recognized that states may in certain circumstances create liberty interests protected by the Due Process Clause, "[b]ut these interests will be generally limited to freedom from restraint which... imposes atypical and significant hardship in the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484, 115 S.Ct. at 2300. The Court concluded that a prisoner sentenced to 30 days in disciplinary segregation did not have a protected liberty interest that entitle him to the procedural protections set forth in <u>Wolff v. McDonnell</u>[4] 418 U.S. 539, 94 S.Ct. 2963(1974).

---

4.  In <u>Wolff</u>, the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant

515 U.S. at 487, 115 S.Ct. at 2302. In <u>Griffin v. Vaughn</u>, 122 F.3d 703 (3rd Cir. 1997), the Court of Appeals for the Third Circuit held that an administrative custody of 15 months was not uncommon and therefore not a violation of Due Process. Under <u>Sandin</u> and <u>Griffin</u> it is clear that the denial of plaintiff's witness and plaintiff's confinement in the RHU does not rise to the level of a constitutional violation and defendant McKeown is entitled to dismissal.

---

in such proceedings does not apply." <u>Id.</u> at 556. Nonetheless, the Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. <u>Id.</u> at 563-71. The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. <u>Id.</u>

An additional procedural requirement was set forth in <u>Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill</u>, 472 U.S. 445, 453-56 (1985). In that case, the Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.

An appropriate Order accompanies this Memorandum
Opinion.


                         s/Malcolm Muir
                         MUIR
                         United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ERIC X. RAMBERT,                          :
                                          :
          Plaintiff                       : No. 4:CV-09-0634
                                          :
     vs.                                  : (Complaint Filed 04/07/09)
                                          :
                                          : (Judge Muir)
JEFFREY A. BEARD, <u>et</u> <u>al</u>.,             :
                                          :
          Defendants                      :

<u>**ORDER**</u>

March 15 , 2010

     For the reasons set forth in the accompanying Memorandum,

**IT IS HEREBY ORDERED THAT:**

     1.   The Corrections defendants' motion to
          dismiss (Doc. 23) is **GRANTED** in part and
          **DENIED** in part as follows:

     2.   The motion to dismiss (Doc. 23) defendants
          Wynder, Klopotoski, Varner, Watson, Lucas,
          Mooney, Demming, Walsh, McKeown and Beard is
          **GRANTED.**

     3.   Corrections defendants' motion to dismiss
          (Doc. 23) defendant Zakaraukas is **DENIED.**

     4.   The motion to dismiss defendants O'Brien and
          Wisniewski-Bunk (Doc. 44) is **DENIED.**

     5.   Plaintiff's motions for preliminary
          injunctive relief (Docs. 46, 52) are
          **DISMISSED** as moot.

6.  All remaining defendants are directed to
    file an answer to the complaint within
    twenty (20) days of the date of this order.


                         s/Malcolm Muir
                         MUIR
                         United States District Judge